# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **GEORGE RIVAS,** | § | |
| *Petitioner,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:06-CV-344-B** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice** | § | |
| **Correctional Institutions Division,** | § | **ECF** |
| | § | **(Death Penalty Cases)** |
| *Respondent.* | § | |
| | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge pursuant to Title 28 United States Code section 636(b).  The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

Before the Court is a petition for writ of habeas corpus filed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254  by Petitioner George Rivas ("Rivas"), a prisoner sentenced to death for capital murder.  For the reasons discussed, the Court finds that Rivas's petition is without merit and should be DENIED.

I.    PROCEDURAL HISTORY

On August 29, 2001, after a trial before a Dallas County jury, Rivas was convicted of the capital murder of Irving police officer Aubrey Hawkins ("Hawkins") and sentenced to death by lethal injection.  (Clerk's Record ("CR") 257-59.)  On June 23, 2004, the Texas Court of Criminal Appeals ("TCCA" and "state habeas court") affirmed Rivas's conviction and sentence on direct

appeal.[1]  *Rivas v. State*, slip op. No. 74,143 (Tex. Crim. App. June 23, 2004);[2] *see also* (Petitioner's

Appendix ("Pet. App.") 2.[3])  The TCCA denied Rivas's petition for rehearing, and the U.S. Supreme

Court denied his petition for certiorari.  (Pet. App. 1); *Rivas v. Texas*, 543 U.S. 1166 (2005).

On September 12, 2003, while his direct appeal was pending before the TCCA, Rivas filed

his state application for writ of habeas corpus in the state trial court.  (1 State Habeas Transcript

("SHTr") 2 .)  The trial court entered findings of fact and conclusions of law recommending that

Rivas's appeal be denied.  On February 15, 2006, the TCCA issued an unpublished order denying

Rivas's writ and adopting the trial court's findings of fact and conclusions of law with the exception

of finding numbers 269-93.  (*Ex parte Rivas*, No. WR-63286-01, 2006 WL 367474 (Tex. Crim. App.

Feb. 15, 2006) (per curiam); (7 SHTr 2138-2229; *see also* Pet. App. 3.)  On February 13, 2007,

Rivas timely a federal petition for writ of habeas corpus in this Court.  (Petition (Doc. #23); Petition

Brief ("Pet. Br.") (doc. #24).)

II.     STATEMENT OF FACTS

        A.      Guilt/Innocence Phase

        The evidence presented during the guilt/innocence stage of Rivas's trial established the

following facts.  On December 13, 2000, a group later known as the "Texas Seven," comprised of

Rivas and six of his fellow inmates, escaped from the Conally Prison Unit of the Texas Department

of Criminal Justice.  (32 Reporter's Record ("RR") 102-04.)   The group included Rivas, Joseph

---

[1]  Under Texas law, trial courts review habeas petitions and make recommendations to the TCCA, which then determines whether habeas relief should be granted.  *Hatten v. Quarterman*, 570 F.3d 595, 599  n.3 (5th Cir. 2009) (citations omitted).  The Court will therefore refer to the "state habeas court" as a single tribunal.

[2]  This opinion may also be found online on the official website for the TCCA at: http://www.cca.courts.state.tx.us/opinions/HTMLOpinionInfo.asp?OpinionID=12568.

[3]  Although Petitioner's Brief and the table of contents contained in Petitioner's Appendix list *Rivas*, slip. op. No. 74,143 as Tab. 1, Tab 1 is actually the state court's order denying rehearing, and the opinion is actually located in Tab 2.

Garcia ("Garcia"), Randy Halprin ("Halprin"), Larry Harper ("Harper"), Patrick Murphy ("Murphy"), Donald Newbury ("Newbury"), and Michael Rodriguez ("Rodriguez"). (*Id.*)

On December 24, 2000, just prior to the closing of the Oshman's Superstore ("Oshman's") in Irving, Texas, the Texas Seven initiated a robbery of the store armed with weapons and two-way radios. Garcia, Halprin, Newbury and Rodriguez entered the store pretending to be customers while Rivas and Harper masqueraded as Oshman's security guards. Murphy, the seventh member of the group, sat in a truck parked outside the Oshman's watching and checking police radio frequencies. (28 RR 42, 56-57, 67, 71; State's Trial Exhibits ("SE") 1 at 1-3, 12.) Rivas and Harper explained to the store managers that they were investigating thefts at another Oshman's and asked that a manager bring the store's employees together to look at a photo spread. (29 RR 42-45, 50-61, 98-99, 106-107; 30 RR 30; 34 RR 109.) Meanwhile, other men went throughout the store stealing merchandise. (29 RR 102-07.) Once the employees had gathered together, Rivas brandished his gun and told them of his intent to rob the store. (28 RR 62-69, 123; 29 RR 107-109, 114-15; 30 RR 31-32, 43; 34 RR 110.) During the robbery, Rivas warned store manager Wesley Ferris ("Ferris") not to try anything or he and the other employees would be shot. (28 RR 65-66, 123; 29 RR 115-17.) Rivas instructed the other men in his group to bring the Oshman's employees to the store's breakroom and tie them up, and Rivas told Ferris to open the store's gun vault, safe and cash registers. (28 RR 74-83, 85-90, 117; 29 RR 45, 59-60, 146; 33 RR 35, 176; SE 1.) Rivas left Ferris with the other employees in the breakroom, took his car keys from him, exited the Oshman's and drove Ferris's Ford Explorer around the store to the loading dock located in the back. (28 RR 80, 90-91, 127; 30 RR 20-23; SE 1.) Altogether, the Texas Seven stole over $70,000 in cash as well as forty-four firearms, ammunition and various equipment from the Oshman's. (28 RR 83, 108-11.)

During the robbery, Misty Wright, a girlfriend of one of the Oshman's employees, waited in her car outside the store and observed the employees inside raising their hands over their heads. Wright telephoned a friend who joined her in her car. The two saw Rivas exiting the Oshman's, and they witnessed Rivas driving Ferris's Ford Explorer to the back of the store. Wright and her friend

fled the parking lot and called the police from a nearby restaurant.  Meanwhile, Rivas used his two-way radio to warn the other robbers and told them  to get to the back of the store.  Within a few minutes, Murphy radioed the group that he saw a police car entering the store parking lot.  (30 RR 12-16, 22-23; SE 1.)

In response to the reported robbery, the police dispatcher initially sent four officers to the Oshman's.  Hawkins was the first to arrive, and he drove through the parking lot directly to the back of the store, where he was shot eleven times by various members of the Texas Seven.  (28 RR 141-42; 30 RR 22-23; SE 1.)   Evidence at trial established that at least five different guns fired at Hawkins from at least two directions in less than a minute and that he died immediately.  (31 RR 56-73; 32 RR 72-88; 34 RR 56-80; 30 RR 98; 33 RR 112; SE 74.)  Some of the robbers then took Hawkins out of the police vehicle and laid him on the ground.  Rivas subsequently ran over Hawkins in Ferris's Ford Explorer, dragging him  approximately ten feet. (30 RR 145-47, SE 1.)  According to Rivas, he did not realize he had run over Hawkins until he heard the evidence at trial.  (43 RR 75, 79.)

During his trial, Rivas testified that as he approached Hawkins's vehicle, he thought he saw the officer reaching for his gun and initially shot him in an attempt to subdue him.  Rivas stated that he shot Hawkins in the chest on purpose because he knew Hawkins would be wearing a bulletproof vest.  (33 RR 192; SE 1.)  Rivas testified that he fired another shot at Hawkins's chest and then fired three more shots in response to what he thought were shots fired by Hawkins.  (43 RR 75, 79.)  The evidence demonstrated that Rivas was also shot during that time period.  (SE 1.)

Following the robbery, the Texas Seven escaped to Colorado where someone identified them and notified the Federal Bureau of Investigation ("FBI").  (32 RR 110-15.)  All of the men were arrested, except Harper, who committed suicide before authorities could apprehend him.  (32 RR 118-21, 161-64, 170-78, 197-98.)  On the day of his arrest, Rivas waived his *Miranda*[4] rights during his police interview and signed a written confession.  (SE 1.)  During searches of an RV and another

---

[4]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

vehicle the Texas Seven had been using, authorities recovered Hawkins's gun as well as guns and merchandise stolen from the Oshman's in Irving, Texas.  (33 RR 32-104.)

Following the close of the evidence, a jury convicted Rivas of capital murder.

B.    Punishment Phase

The evidence presented during the punishment phase of Rivas's trial established the following facts.  Rivas was serving seventeen life sentences, some concurrent, when he escaped from prison.  Rivas had prior convictions for aggravated robbery of an Oshman's in El Paso, Texas, aggravated kidnapping and burglary.  (36 RR 10-19; 39 RR 76-79; SE 498.)  Evidence from both the State as well as the defense established that Rivas was the ringleader of the Texas Seven, and that he had planned their escape from the Connally Unit as well as the robbery of the Irving Oshman's.  (36 RR 28-29, 34-38, 42-43; 42 RR 51-73, 104-13; 43 RR 7-36.)  The State introduced evidence that Rivas and the other escapees assaulted and threatened prison employees during their escape.  (36 RR 56-70, 82-83, 104-18; 42 RR 74-105; 37 RR 95-104.)  Additionally, the State solicited the testimony of Rivas's half sister, who claimed that he had sexually abused her from the age of six through sixteen.  (38 RR 36-42.)  Finally, the State presented expert testimony from criminal forensic psychiatrist Dr. Richard Coons ("Coons"), who testified that based upon his review of Rivas's history, it was his opinion that Rivas would probably commit criminal acts of violence and continue to threaten society.  (41 RR 35-48.)

Rivas testified in his own defense and admitted to committing numerous crimes as well as to planning the group's escape from prison and the robbery of the Oshman's in Irving.  In his own defense, he told the jury that he tried to be polite and minimize the pain he inflicted on those he robbed.  He also testified that he did not intend to kill Hawkins, nor had he planned to commit additional robberies.  Rivas denied his half sister's allegations of abuse.  (38 RR 117-28; 42 RR 25-31, 51-76, 81-82, 86, 103; 43 RR 30-31, 36-87, 149-50, 159-63; 44 RR 30, 35-36.)  Ultimately, Rivas testified that he would rather die than be sent back to prison.  (44 RR 34-36.)

III.   STANDARD OF REVIEW

The standard of review in death penalty cases is set forth in AEDPA, which governs all federal petitions for habeas corpus filed on or after its effective date that were previously adjudicated on the merits in state court. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under the AEDPA, a petitioner is only entitled to federal habeas relief with respect to any claim that was actually adjudicated on the merits in state court proceedings if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (2009).

A claim has been adjudicated or resolved "on the merits" if the state court's decision was substantive rather than procedural. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *(Ricky Lee) Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir.1997)). The state habeas court's denial of Rivas's state writ in this case constitutes an adjudication on the merits for purposes of section 2254(d). *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App.1997).

Section 2254(d)(1) governs pure questions of law as well as mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475-76 (5th Cir. 2001). Federal district courts reviewing state habeas court decisions may only grant relief if the state court reaches a conclusion on a question of law opposite that of the U.S. Supreme Court or if the state court comes to a different decision than the U.S. Supreme Court in a case where the facts are materially indistinguishable. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court has also unreasonably applied clearly established federal law  if the court correctly identifies the governing legal principle from the Supreme Court's decisions but unreasonably applies the principle to the facts of the case. *Id*. at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Finally, a state court acts unreasonably for purposes of

-6-

section 2254(d)(1) if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Reed v. Quarterman*, 504 F.3d 465, 471 (2007) (quoting *Williams*, 529 U.S. at 407). Federal courts deciding federal habeas appeals determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Questions of fact are governed by section 2254(d)(2). *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Federal courts analyzing habeas claims under section 2254(d)(2) must presume that the state court's factual findings are correct unless the findings were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). In order to overcome this presumption, a petitioner such as Rivas must offer clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

IV.   ANALYSIS

Rivas moves this Court for habeas relief, claiming nine separate violations of his federal Constitutional rights:

Guilt/Innocence Phase of Trial

Claim A-1:  Rivas was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution when his trial counsel failed to object to the State's improper argument regarding the necessary intent required to convict Rivas of capital murder under Texas law.  (Pet. Br. at 5.)

Claim A-2: Rivas was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution when his trial counsel failed to object to a jury venire that did not adequately reflect a fair cross-section of the community.  (*Id.*)

Punishment Phase of Trial

Claim B-1: Rivas was denied due process of law when the trial court erroneously admitted expert witness testimony regarding future dangerousness.  (*Id.*)

-7-

<u>Claim B-2</u>:  Rivas was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution when his trial counsel failed to object to the prosecution's reading of unsworn out-of-court statements made by Rivas's co-defendants.  (*Id.*)

<u>Claim B-3</u>: Texas's lethal injection scheme violates Rivas's Eighth Amendment guarantee against cruel and unusual punishment.  (*Id.* at 6.)

<u>Claim B-4</u>: Rivas's due process rights were violated by of the trial court's improper allocation of the burden of proof on the issue of mitigation in its instructions to the jury.  (*Id.*)

<u>Claim B-5</u>: Rivas's due process rights were violated because of the trial court's use of vague terms in its instructions to the jury regarding "special issues." (*Id.*)

<u>Claim B-6</u>: Rivas's due process rights were violated by the trial court's issuance of jury instructions requiring ten "no" votes on special issue number three. (*Id.*)

<u>Claim B-7</u>: Rivas's due process rights were violated by the trial court's jury instruction, which prevented  the jury from considering the unlikelihood of his release on parole. (*Id.*)

The Court will address each of Rivas's claims below.

A.      <u>Errors at the Guilt/Innocence Phase of Trial</u>

Rivas makes two claims for relief based upon alleged violations of his Constitutional rights during the guilt/innocence phase of his trial.  Both claims are based on the alleged ineffective assistance of Rivas's trial counsel.  The Sixth Amendment of the U.S. Constitution guarantees criminal defendants the right to reasonably effective assistance of counsel at trial and on appeal. *Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980); *Thomas v. Lynaugh*, 812 F.2d 225, 229 (5th Cir. 1987) .  A petitioner seeking habeas relief on the basis of ineffective assistance of counsel must satisfy the two-prong test set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Court held that a petitioner such as Rivas must demonstrate by a preponderance of the evidence first that his counsel's performance was deficient and second that the deficient performance prejudiced his defense.  *Id.* at 687.  A federal court reviewing an ineffective

assistance of counsel claim must consider the totality of the evidence, and there is a strong presumption that the petitioner's counsel's conduct falls within the range of reasonable assistance. *Id.* at 669.  The federal court must evaluate defense counsel's conduct from counsel's perspective at the time.  *Id.* at 689.  To overcome the strong presumption that his counsel acted reasonably, a petitioner such as Rivas must produce clear and convincing evidence that there is a "reasonable probability" that but for his counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 669.  "Reasonable probability" is defined as sufficient to undermine confidence in the outcome.  *Id.*  A federal court may only find that defense counsel was deficient if counsel's performance was such that it "renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams*, 529 U.S. at 393, n.17 (citations and internal quotation marks omitted).

1.      <u>Ineffective Assistance of Counsel for Failing to Object to the Prosecutor's</u>
<u>Argument Concerning "Intent" Under Texas Law (Claim A-1).</u>

In his first ground for relief, Rivas claims that his trial counsel failed to provide effective assistance of counsel at the guilt/innocence phase of the trial when he did not object to the prosecutor's allegedly erroneous closing argument.  Rivas complains that the prosecutor's argument was flawed because the prosecutor did not discuss the specific intent required of Rivas's co-conspirator for a capital murder conviction.  (Pet. Br. at 17, 23-30.)  Rivas's claim arises from the following portion of the prosecutor's argument highlighted in bold text as follows:

> The evidence in this case is overwhelming.  It is a case which you – it has been explained to you that the State can prove one of two ways, or both, and I submit to you that we have done both.  We can prove to you that [Rivas] intentionally killed Aubrey Hawkins because he was a police officer and he knew that.  We can prove to you that he killed Aubrey Hawkins because he murdered him during the course of a robbery.  **Or we can prove to you that he entered into this conspiracy, and even if he didn't have the intent - let's just take for a moment that ludicrous explanation in his confession that he didn't have the intent to kill anyone out there.  If you agree with that, he is still guilty under the law because he entered into a conspiracy to commit robbery and he should have anticipated that someone would die.**  And this is a plan destined to fail, folks.

(35 RR 58-59.)

-9-

Specifically, Rivas claims that the prosecutor misled the jury regarding the specific intent required to convict Rivas of capital murder.  According to Rivas, the State did not establish beyond a reasonable doubt that either Rivas or any of his co-conspirators shot at Hawkins with the specific intent to cause his death.  (Pet. Br. at 23.)  The State erred, Rivas claims, in failing to explain this requirement to the jury, and Rivas's counsel erred in failing to object to the prosecutor's argument containing the omission.

Texas law allows prosecutors arguing to a jury to discuss four topics: "(1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and, (4) pleas for law enforcement."  *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993).  This list is expanded in the Texas Code of Criminal Procedure to include evidence pertaining to a defendant's character and reputation.  TEX. CODE CRIM. PROC. ANN. art 37.07 § 3(a) (Vernon 1981 & Supp. 2005).

The trial court correctly instructed the jury that the State could prove Rivas's guilt by proving either (1) that Rivas killed Hawkins with knowledge that Hawkins was a police officer, or (2) that Rivas entered into a conspiracy to commit robbery and that one of Rivas's co-conspirators intentionally and knowingly killed Hawkins in furtherance of that conspiracy.  (Pet. Br. at 23; TEX. PENAL CODE ANN. § 7.02(b) (Vernon 2003); CR 245-246.)

The evidence at trial established that it could not be clearly determined who was responsible for firing the shot that actually killed Hawkins.  (31 RR 58-73, 89; DE 9).  Rivas himself admitted to shooting at Hawkins four times.  (29 RR 34-35; SE 1).  The record also demonstrates that Hawkins was shot eleven times by at least two guns and that at least three of those shots fatally wounded Hawkins.  (31 RR 58-73, 89; DE 9).  Additionally, the other prosecutor, not the one giving the speech Rivas complains of, explained to the jury that the co-conspirator who actually killed Hawkins had to have acted intentionally and knowingly." (44 RR 51; 7 SHTr 2191 (#254); 7 SHTr 2131.)

Rivas's claim is based on the premise that his trial counsel was ineffective for failing to object to conduct by the prosecutor that violated Texas law.  The first step Rivas must undertake to establish a *Strickland* violation for failure to object is to demonstrate that any objection his trial counsel allegedly should have made would have been meritorious under Texas law.  A meritorious objection is one that would have been sustainable if it had been properly made.  *See (Norman Evans) Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir.1998) (holding that counsel's failure to make a frivolous objection is not unreasonable).

Reviewing this claim on appeal, the state habeas court rejected it and held that any objection Rivas's trial counsel could have made would have been meritless.  The court found that Rivas had misinterpreted the prosecutor's argument, and moreover held that the argument itself was not in error because the prosecutor was "simply focusing on [Rivas's] mental state."  The state habeas court found that the prosecutor's "silence on the matter of the killing co-conspirator's mental state" did not equate to telling the jury that proof of intent was not required.  (7 SHTr 2190-91 (internal citations omitted).)

The state habeas court went on, noting that trial counsel's informed strategic decisions rarely constitute grounds for a claim of ineffective assistance of counsel, and the court found that Rivas's trial counsel was making a strategic decision in not objecting to the prosecutor's argument.  (7 SHTr 2192 (citing RR 40-44; (*Ricky Lee*) *Green v. Johnson*, 116 F.3d at 1122).)  The state habeas court held that Rivas's "counsel's decision not to object was consistent with the reasonable trial strategy of not objecting during closing argument absent egregious error."  (RR 40-44)

Rivas has not and cannot demonstrate that an objection would have been meritorious had it been made, and thus the state habeas court's finding was not contrary to, or an unreasonable application of, clearly established federal law.

Even assuming, *arguendo*, that Rivas's trial counsel erred in failing to object to the prosecutor's argument as set forth above, his claim nevertheless fails because Rivas has failed to establish that his counsel's conduct prejudiced his case in light of the trial court's correct

instructions to the jury.  Addressing the question of prejudice, the state habeas court held that Rivas had failed to "rebut the presumption that counsel's decision not to object was a sound one, much less demonstrate how he was prejudiced by it."  (7 SHTr 2192) (internal citations omitted).  It is well established that jurors are presumed to follow the trial court's instructions.  *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002).

Accordingly, the Court finds that the state habeas court's conclusion that Rivas's trial counsel did not render ineffective assistance by failing to object to the prosecutor's argument was not an unreasonable application of the *Strickland* standard.  Moreover, in light of the voluminous evidence of Rivas's guilt, the Court finds that Rivas has not demonstrated that, even if his counsel's performance was deficient, that the performance prejudiced Rivas.  Rivas is not entitled to any relief on this claim of ineffective assistance of counsel, and the Court recommends it be denied.

2.    Failure to Preserve An Objection Regarding Jury Composition (Claim A-2)

In claim A-2, Rivas claims that his counsel failed to protect his rights under the Sixth and Fourteenth Amendments to a fair cross-section of the community which was violated by the under-representation of Hispanics, persons 18 to 34 years old, and persons from households with incomes under $35,000 within the jury pool.  (Pet. Br. at 31-43.)  Rivas's trial counsel did not make a fair-cross-section objection.  Thus this Court must determine whether the fair-cross-section claim would have had merit, since it would not be deficient to withhold a meritless objection.  *See Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *(Norman Evans) Green*, 160 F.3d at 1037.

In support of his claim, Rivas cites the U.S. Supreme Court's decision in *Taylor v. Louisiana*, 419 U.S. 522, 537 (1975), in which the Court held  that a defendant has the right to a fair trial by a jury selected from a cross-section of the community.  To establish a *prima facie* violation of this right, Rivas must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which Dallas County juries are selected is not fair and reasonable in relation to a number of such persons within the community, and (3) that this resulting under-representation is due to systematic exclusion of the group in the jury

-12-

selection process. *Duren v. Missouri*, 439 U.S. 357, 363-64 (1979). Rivas must establish each of these elements to established a prima facie violation of the Sixth Amendment's fair cross-section requirement. *Timmel v. Phillips*, 799 F.2d 1083, 1086 (5th Cir. 1986). In his state habeas appeal, Rivas presented expert analysis from Dr. Harold J. Hietala ("Hietala") to support his claim.

Analyzing the "distinctive group" requirement set forth in *Taylor*, the state habeas court correctly noted that although Hispanics qualify as a distinctive group in Dallas County, persons 18 to 34 – in fact persons of any particular age group – have not been found to be a distinctive group. (7 SHTr at 2143 (citing *Aldrich v. State*, 928 S.W.2d 558, 560 (Tex. Crim. App. 1996).) The Court finds that the state habeas court's decision on whether persons aged 18 to 34 qualify as a distinctive group is not contrary to clearly established federal law.

Next, the state habeas court found that Rivas had failed to demonstrate that the representation of Hispanics is not fair and reasonable in relation to the number of Hispanics in Dallas County. (7 SHTr at 2146.) Although Rivas presented U.S. census figures demonstrating that the population percentages of Hispanics is well above the population percentage of Hispanics on Rivas's venire, he introduced no evidence establishing that the representation of Hispanics "on Dallas County venires is not fairly and reasonably related to the number of such persons in the community *who are qualified to sit on a jury*." *Id.* (emphasis in original) (citing *Pondexter v. State*, 942 S.W.2d 577, 580-81 (Tex. Crim. App. 1996) (holding that whether representation of a distinctive group is reasonable is based upon comparison to percentage of those who qualify for jury service)). The state habeas court noted its disagreement with Hietala's assumption that the results of his analysis would be the same using either the population as a whole or the jury-qualified population (Applicant's Exhibit 1, Hietala Aff., § 10.2), citing an exhibit attached to the State's writ application showing high percentages of foreign persons and non-citizens in the U.S. Hispanic population. (7 SHTr at 2146-2147.) The state habeas court also commented on other discrepancies in Hietala's data. (*Id.*). Ultimately, the court found that Rivas failed to satisfy the second prong of *Duren*, requiring proof of violation of the fair cross-section requirement. (*Id.*)

*Duren* does not require that the "juries actually chosen must mirror the community" but that they must be drawn from a source that is fairly representative of the community. *Taylor*, 419 U.S. at 538. "The fair-cross-section requirement does not guarantee jur[ies] of any particular composition. Rather, it only guarantees that the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups." *Paredes v. Quarterman*, 574 F.3d 281, 289 (5th Cir. 2009) (internal quotations and citations omitted). Moreover, the Constitution assures due process in the summoning of a fair cross section of jurors, not in the response of those properly summoned. The Court finds that the state habeas court's decision on this issue is not contrary to or an unreasonable interpretation of clearly established federal law.

Finally, the state habeas court analyzed *Duren*'s "systematic exclusion" requirement and found that Rivas failed to demonstrate that under-representation of Hispanics "was inherent in the particular jury selection process used." (7 SHTr at 2148 (citing *Duren*, 439 U.S. at 366.) In order to show that Hispanics were systematically excluded, Rivas must demonstrate that the underrepresentation was inherent in Dallas County's jury selection process. *Duren*, 439 U.S. at 366. To do so Rivas must identify a specific systematic defect or operational deficiency responsible for the underrepresentation. *United States v. Pion*, 25 F.3d 18, 23 (1st. Cir. 1994). The state habeas court held that "affirmative barriers to selection for jury service or different selection standards for different groups is the earmark of a Sixth Amendment violation." (7 SHTr at 2148-49 (citing *Barber v. Ponte*, 772 F.2d 982, 997-98 (1st. Cir. 1985 ) ("The Supreme Court has never gone so far as to hold that the Constitution requires venires to be, statistically, a substantially true mirror of the community."); *Taylor*, 419 U.S. at 523, 531 (holding that a Louisiana statute requiring women to file a written declaration of desire to be subject to jury service before being eligible for selection violated the fair cross-section requirement); *Lacy v. State*, 899 S.W.2d 284, 288 (Tex. App.–Tyler 1995, no pet.) (holding that a successful cross-section claim must demonstrate "some manner whereby [the distinctive groups] were not included in the computer base from which the panel was selected.")).) Noting that jurors in each county in Texas are selected from the names of all persons

on current voter registration lists and from those who have valid Texas driver's licenses or identification cards, the state habeas court found that "there is nothing inherently exclusive about this method of selection, and it has been upheld repeatedly against Sixth Amendment attack." (7 SHTr at 2150 (citing TEX. GOV'T CODE ANN. § 62.001 (Vernon Supp. 2004) and *United States v. James*, 528 F.2d 999, 1022 (5th Cir. 1976).) Moreover, the court noted that Rivas failed to assert an operational defect in Dallas County's juror selection process. (7 SHTr at 2154.)

Ultimately, the state habeas court found that Rivas "failed to prove any violation of the fair cross-section requirement." (SHTr 2142.) Citing the U.S. Supreme Court's decision in *Ramdass v. Angelone*, 530 U.S. 156, 172 (2000), the state habeas court held that Rivas's "mere citation of newspaper articles...does not suffice to introduce into evidence the truth of the hearsay or so-called scientific conclusion contained within them." (SHTr at 2142-43.) Furthermore, it held that even if the newspaper articles were adequate, the articles combined with evidence Rivas presented from Hietala in the form of a statistical analysis nevertheless failed to establish that Rivas's right to a fair cross-section of the community on his jury was violated. (*Id.* at 2143.)

Since Rivas's allegations evince no violation of *Duren*, there could be no ineffective assistance for failing to raise the *Duren* claim. *See Turner*, 481 F.3d at 298. The Court finds that the state habeas court's decision denying Rivas's claim for relief is not contrary to, nor is it an unreasonable interpretation of, clearly established federal law. Accordingly, this claim is without merit and the Court recommends that it be denied.

B.    Errors at the Punishment Phase of Trial

1.    Improper Admittance of Expert Testimony on the Issue of Future Dangerousness (Claim B-1)

In his first complaint pertaining to the punishment phase of his trial, Rivas alleges that the trial court violated his due process rights by allowing improper expert testimony from the State's expert, Coons, regarding future dangerousness. (Pet. Br. at 44.) Rivas claims that the state failed to satisfy the test for reliability of expert witness testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rivas argues that "[d]espite the fact that the *Daubert*

-15-

discussion of reliability in expert testimony was in the context of a federal civil case, its standard of reliability should be a model for death penalty determinations." (Pet. Br. at 46.) Rivas's argument, however, is foreclosed by Fifth Circuit and U.S. Supreme Court precedent.

In *United States v. Fields*, 483 F.3d 313, 341-46 (2007), the Fifth Circuit, noting that *Daubert* does not apply to sentencing (including capital sentencing), held that a "jury could benefit from the opinion of a psychological expert[5] on [future dangerousness]." *Id.* at 345. That court further noted that reliability of such testimony is not of constitutional concern because "[e]xpert testimony about a defendant's 'future dangerousness' to determine his eligibility for the death penalty, *even if wrong 'most of the time,' is routinely admitted.*" *Id.* at 345 n.6 (quoting *United States v. Scheffer*, 523 U.S. 303, 334 (1998) (Stevens, J., dissenting)). Because Dr. Coons's testimony was constitutionally permissible, the Court recommends that this claim be denied.

Moreover, even if Coons's testimony was improperly admitted, Rivas's claim nevertheless fails because he cannot demonstrate prejudice. Analyzing this claim on appeal, the TCCA found that the jury's decision could not have been significantly influenced by Coons's testimony because Rivas "had demonstrated a continuing propensity for violent behavior which was unlikely to change." *Rivas v. State*, No. 74, 143, slip op. at 7-8. The TCCA specifically focused on evidence introduced at trial that Rivas was serving "seventeen stacked life sentences" at the time he and the other men escaped from the Connally Unit, and on the fact that Rivas and the other men "continued to acquire weapons" after escaping to Colorado. The court also considered the testimony of Rivas's half-sister regarding his sexual abuse of her during her childhood. *Id.* Rivas has not and cannot demonstrate that Coons's testimony significantly influenced the jury's decision in light of the other

---

[5]Notably, the testimony of Dr. Coons, the expert in this case, was also at issue in *Fields*. *See Fields*, 483 F.3d at 341.

evidence presented at trial.[6]  Rivas has failed to establish a Fourteenth Amendment claim under U.S.

Supreme Court precedent and the law of this Circuit.  The Court recommends this claim be denied.[7]

> 2.   Ineffectiveness of Counsel – Failure to Object to Prosecutor's Reading of Out-of-Court Statements Made by Rivas's Co-Defendants (Claim B-2).

In his third ineffective assistance of counsel claim, Rivas asserts that his trial counsel was

ineffective during the punishment phase of trial for failing to object to the prosecutor's use of

statements from Rivas's non-testifying co-defendants used to impeach him.  (Pet. Br. at 53-66.)

Rivas claims that the prosecutor's statements were inadmissible hearsay statements never properly

admitted into evidence and were also in violation of Rivas's Sixth Amendment confrontation clause

rights as set forth in the U.S. Supreme Court's decision, *Crawford v. Washington*, 541 U.S. 36

(2004).

Specifically, Rivas complains about the prosecutor's use of statements made by Rivas's co-

defendant, Randy Halprin, to impeach Rivas's testimony regarding his lack of intent to kill Officer

Hawkins when firing his gun. (43 RR 109.)  According to the statement read by the prosecutor,

Halprin stated that Rivas "went up and shot the cop four times[,]" which, in the State's estimation,

indicated that Rivas intended to "execute" Officer Hawkins, rather than merely subdue him as Rivas

claimed.  (43 RR 109-110.)  In addition to Halprin's statement, the prosecutor stated that Murphy,

---

[6]To the extent that Rivas claims Dr. Coons's testimony was inadmissible because he did not interview Rivas himself, his claim is without merit.  *See, e.g. Barefoot v. Estelle*, 463 U.S. 880, 896-906 (1983) (holding that whether a psychiatric expert interviews a defendant affects the weight of his or her testimony, but not its admissibility).  Likewise any claim that Rivas attempts to make alleging that *Daubert* has somehow altered admissibility of expert testimony after *Barefoot* also fails under the law of this Circuit.  *See, e.g.*, *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002).  (holding that a capital murder defendant's trial counsel had not erred in employing strategy not to object to expert testimony regarding future dangerousness at trial because such an objection would have been futile under *Barefoot*) (citing *Tigner v. Cockrell*, 264 F.3d 521, 526-27 (5th Cir. 2001) and *Little v. Johnson*, 162 F.3d 855, 862-63 (5th Cir. 1998).

[7]  As his eighth point of error in his direct appeal, Rivas challenged the admissibility of Coons's testimony under Texas Rule of Evidence 702 and *Kelly*, and his claim was overruled by the TCCA, noting that Coons's testimony "could not have significantly influenced the jury's decision because [Rivas] himself had demonstrated a continuing propensity for violent behavior which was unlikely to change."  *Rivas*, slip op. No. 74,143 at 8.

Rivas's co-defendant, told authorities that the group of robbers brought weapons taken during their escape from prison with them in the lookout vehicle, and that Murphy claimed that his job was to initiate a "firefight" with the police. (43 RR 117-23.) Again, the prosecutor argued that Rivas's co-defendant's statements discredited Rivas's claims about lacking specific intent to kill and indicated that the group intended to "hurt [somebody] out there that day." (43 RR 115, 117.) Finally, attempting to contradict Rivas's claims that the sole purpose of the robbery was to obtain money, the prosecutor read a portion of co-defendant Rodriguez's statement to the police that one of the group's reasons for robbing the Oshman's was to obtain firearms. (43 RR 124-25.)

Rivas complains that his attorney failed to make an objection to the prosecution's reading of his absent co-defendants hearsay statements during his trial as none of the men were present to allow Rivas to cross examine. (Pet. Br. at 55-56.) According to Rivas, the statements of his co-defendants which were read or paraphrased by the prosecutor "had a critical bearing on the jury's resolution of the second special issue at punishment, that is, whether [Rivas] actually caused the death of the victim, or at least anticipated that a life would be taken, as contemplated by Article 37.071, Section 2(b)(2) of the Texas Code of Criminal Procedure." (Pet. Br. at 55 (citing CR 264; 44 RR 96-97.))

At sentencing, hearsay concerns carry less weight. The Confrontation Clause does not apply, rather the admissibility of hearsay evidence is governed by the Due Process Clause, which merely "requires that some minimal indicia of reliability accompany a hearsay statement." *Fields*, 483 F.3d at 337-338 (quoting *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993). However, confessions by accomplices that incriminate the defendant are "presumptively unreliable." *Lilly v. Virginia*, 527 U.S. 116, 130-31 (1999). On this record, whether the testimonial hearsay would have been admissible is a close question. However, the Court need not decide this question because, as the state habeas court noted on review, even if the testimony was objectionable, Rivas's counsel made a strategic decision not to object to this evidence during the punishment phase. The Fifth Circuit, analyzing a claim of deficient performance under *Strickland*, stated, "We compare counsel's performance to an objective standard of reasonableness, mindful of the strong presumption of

-18-

adequacy. We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *(Ricky Lee) Green*, 116 F.3d at 1122. At Rivas's state writ hearing, his counsel testified that it was his strategy to object as little as possible in order to appear open and honest to the jury. (SH RR 50-51, 103-05, 127.) Because Rivas had testified that he did not intend to kill Officer Hawkins, it was important to try to appear honest so that at least one juror might believe him and vote against a sentence of death. (*Id*.) Rivas's counsel testified that he thought the prosecutor was intentionally trying to bait him into objecting and abandoning that strategy. (*Id.* at 54, 57.) The state habeas court found that Rivas failed to overcome the strong presumption that his counsel's decision not to object constituted a valid trial strategy. (SHTr at 2200-01) (citing *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003)). The Court finds that the state habeas court's decision on this issue was not contrary to nor an unreasonable application of federal law, and thus Rivas's claim fails on this basis.

Finally, even assuming, *arguendo*, that Rivas has established a confrontation clause violation, he is not entitled to habeas relief unless he can demonstrate that his attorney's error in failing to object "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). To do this, Rivas is required to have "successfully established...grave doubt as to whether the assumed wrongfully admitted hearsay testimony influenced the conviction." *Cupit v. Whitley*, 28 F.3d 532, 538-39 (5th Cir.1994). Rivas has failed to make a showing that the admission of hearsay evidence met this standard. Given the abundance of evidence pertaining to each of the special issues presented to the jury at the punishment phase, the Court finds that Rivas cannot demonstrate prejudice under the standards set forth in *Strickland* and his claim likewise fails on this basis.

Under the U.S. Supreme Court precedent supporting the state habeas court's decision to deny this ineffective assistance of counsel claim, the Court find that the state habeas court's decision is not contrary to clearly established federal law. Rivas's claim is without merit, and the Court recommends it be denied.

### 3.   Objection to the State's Lethal Injection Method (Claim B-3)

In his fifth claim for relief, Rivas claims that the State's lethal injection protocol violates the Eighth Amendment's guarantees against cruel and unusual punishment.  (Pet. Br. at 68-73.)  Rivas describes a number of specific cases in Texas where executions were allegedly "botched."  (*Id.* at 68.)  Following these descriptions, Rivas specifically alleges that Texas's lethal injection protocol creates "a substantial and unacceptable possibility that [Rivas's] own death will be similarly prolonged and will cause wanton and unnecessary pain..."  (*Id.* at 71.)

Rivas's claim that the manner of execution in Texas violates his Eighth Amendment guarantees against cruel and unusual punishment is precluded by the U.S. Supreme Court's decision in *Baze v. Rees*, 553 U.S. 35, 128 S.Ct. 1520 (2008).  The Court in *Baze* addressed Kentucky's three-drug protocol for lethal injection and held that it was constitutional, finding that the petitioner in *Baze* failed to demonstrate that Kentucky's lethal injection procedure creates a substantial risk of serious harm that would be reduced by the use of an alternative protocol. *Id.* at 1532.  Like Kentucky's protocol, Texas's uses three chemical agents and the process is similar to that utilized by other states.  (Pet. Br. at 38-39 (citing *Abdur'Rhaman v. Bredesen*, 181 S.W.3d 292, 302 (Tenn. 2005)); *Reid v. Johnson*, 333 F. Supp. 2d 546-47, 553-54 (E.D. Va. 2004); *State v. Webb*, 750 A.2d 448, 450 n.5, 451 (Conn. 2000).)  Moreover, as was the case in *Baze*, Rivas alleges a number of issues with Texas's current protocol, but he fails to demonstrate that the drug protocol creates a substantial risk of serious harm and has not offered an alternative drug protocol that would reduce the risk, if any, of serious harm.  Accordingly, under the U.S. Supreme Court's decision in *Baze*, Rivas's claim of cruel and unusual punishment is without merit and should therefore be denied.

### 4.   Improper Allegations of Burden of Proof in Jury Instructions (Claim B-4)

Next, Rivas claims that his Sixth and Fourteenth amendment rights were violated by the trial court's failure to instruct the jury as to the burden of proof regarding the mitigating factors contained in the jury charge.  (Pet. Br. at 74-75.)  Specifically, Rivas claims that the State should bear the burden of proving beyond a reasonable doubt that there were not sufficient mitigating circumstances to warrant imposition of life imprisonment rather than the death penalty.  (*Id.*)  To support his claim,

Rivas attempts to rely on U.S. Supreme Court precedent set forth in *Ring v. Arizona*, 536 U.S. 584 (2002) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).   But Rivas acknowledges that Fifth Circuit precedent forecloses Rivas's claim.  (*Id.* at 75 (citing *Rowell v. Dretke*, 398 F.3d 370 (5th Cir. 2005) (holding that there is no burden of proof regarding mitigating evidence at the punishment phase.)  The Fifth Circuit has specifically addressed and dismissed Rivas's argument on more than one occasion.  *See, e.g.*, *Scheannette v. Quarterman*, 482 F.3d 815, 828 (5thCir. 2007); *Granados v. Quarterman*, 455 F.3d 529, 536 (5th Cir. 2006); *Rowell*, 398 F.3d at 379.  In *Scheannette*, the court reiterated its previous holdings, stating that "the Texas death penalty scheme [does] not violate either *Apprendi* or *Ring* by failing to require the state to prove beyond a reasonable doubt the absence of mitigating circumstances."  *Scheannette*, 482 F.3d at 828.  Noting that death is the maximum penalty under Texas law, the court reasoned that Texas's scheme, which requires the state to prove each and every prerequisite to a sentence of capital punishment beyond a reasonable doubt before imposing the maximum state penalty of death does not increase a defendant's sentence.  *Id.* Rather, a finding that sufficient mitigating circumstances exist would reduce a defendant's punishment from death to life imprisonment.  *Id.*  (citing *Granados*, 455 F.3d at 537).

The TCCA adopted the trial court's conclusions on habeas review, finding that Rivas failed to raise this particular claim at trial, instead objecting only on Eighth Amendment grounds, and held that Rivas's claim was procedurally barred for that reason.  (SHTr 02207 at #332-345.)  In the alternative, the state habeas court held that even if his claim were subject to review, it lacked merit because neither *Ring* nor *Apprendi* "require the state to bear the burden of proving beyond a reasonable doubt that the mitigation issue should be answered negatively." (*Id.* at #339-345 (internal citations omitted).)  Under the Fifth Circuit precedent discussed previously, the Court finds that the state habeas court's decision denying Rivas's claim is not contrary to clearly established federal law. Accordingly, this claim is without merit, and the Court recommends it be denied.

5.     Due Process Violation As a Result of the Court's Refusal to Submit Certain
         Jury Instructions (Claim B-5)

Rivas next claims that his due process rights were violated by the trial court's  instructions

to the jury with special issues that contained allegedly vague and undefined terms.  (Pet. Br. at 79-

84.)  Specifically, Rivas complains of the trial court's failure to define the terms "probability,"

"criminal acts of violence," and "continuing threat to society."  (*Id.*)  Rivas acknowledges the trial

court submitted to the jury the special issues statutorily mandated by the Texas Code of Criminal

Procedure at the conclusion of the punishment phase of his trial. As with his previous claim, Rivas

admits that this claim is barred by Fifth Circuit precedent.

The special issues submitted to the jury in Rivas's trial included:

### Special Issue No. 1

Do you find from the evidence beyond a reasonable doubt that there is a
probability that the defendant, George Rivas, would commit criminal acts of violence
that would constitute a continuing threat to society?

### Special Issue No. 2

Do you find from the evidence beyond a reasonable doubt that the defendant,
George Rivas, actually caused the death of the deceased or did not actually cause the
death of the deceased but intended to kill the deceased or another or anticipated that
a human life would be taken?

### Special Issue No. 3

Do you find, taking into consideration all of the evidence, including the
circumstances of the offense, the defendant's character and background, and the
personal moral culpability of the defendant that there is a sufficient mitigating
circumstance or circumstances to warrant that a sentence of life imprisonment rather
than a death sentence be imposed?

(44 RR 51-52); *see* TEX. CODE CRIM. PROC. ANN. art. 37.071 §§ 2(b)(1), (e)(1) (Vernon 1981

& Supp. 2005).

Rivas argues that because the jury did not receive specific instructions regarding the meaning

of the terms "probability," "criminal acts of violence" or "continuing threat to society," the trial

court's jury charge "violated the constitutional requirement that each statutory aggravating

circumstance genuinely narrow the class of persons eligible for the death penalty and reasonably

justify the imposition of the death penalty." (Pet. Br. at 81 (citing *Godfrey v. Georgia*, 446 U.S. 420 (1980).)  According to Rivas, the special issues functioned as aggravating circumstances because they "circumscribe[d] the class of persons eligible for the death penalty."  (Pet. Br. at 81 (quoting *Zant v. Stephens*, 462 U.S. 862, 878 (1983).)  Citing the U.S. Supreme Court's decision in *Maynard v. Cartwright*, 486 U.S. 356 (1988), Rivas argues that a death sentence may not be imposed using a vaguely defined aggravating factor unless that factor is accompanied by "a valid limiting construction, thereby providing the sentencer specific and detailed guidance concerning its scope," and that no such limiting construction was given.  (Pet. Br. at 81.)  Because the jury charge in his case was constitutionally inadequate, Rivas claims, "there was no rational process justifying the imposition of the death sentence upon [Rivas] in comparison to other cases in which other defendants received a life sentence," and this violated Rivas's rights under the Sixth, Eighth and Fourteenth Amendments.  (*Id.*)

In *Tuilaepa v. California*, 512 U.S. 967, 971-73 (1994), the U.S. Supreme Court  discussed the capital punishment decision-making process, distinguishing the eligibility phase from  the selection phase.  The Court explained that in determining a defendant's eligibility for capital punishment, the trier of fact must both "convict the defendant of murder" and then must also "find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase."  *Id.* Continuing, the Court held that it is only after the trier of fact makes the determination that the defendant is eligible for capital punishment that it then considers the factors used to determine the appropriate punishment for the defendant.  *Id.* at 979.  Subsequently, in *Buchanan v. Angelone*, 522 U.S. 269, 276 (1998), the Supreme Court again addressed the issue, noting that its previous decisions "suggest that complete jury discretion is constitutionally permissible."  As for the specific terms Rivas complains of–"probability," "criminal acts of violence" and "continuing threat to society"– Fifth Circuit precedent has established that those terms are not unconstitutionally vague and that their meanings may be readily understood.  *See, e.g., Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996); *James v. Collins*, 987 F.2d 1116, 1119-20 (5th Cir. 1993); *Nethery v. Collins*, 993 F.2d 1154, 1162 (5th Cir. 1993).

Rivas raised this claim as his twelfth point of error in his direct appeal, and it was rejected by the TCCA. *Rivas*, No. 74,143, slip. op. at 9. Under the well-established Fifth Circuit precedent supporting this decision, the Court finds that the state habeas court's decision to deny Rivas's claim for relief is not contrary to clearly established federal law. Thus this claim is without merit, and the Court recommends it therefore be denied.

6.   <u>Claim that the Texas Death Penalty Scheme is Unconstitutional for Requiring at Least Ten "No" Votes for the Jury to Return a Negative Answer to the Punishment Special Issues (Claim B-6)</u>

Rivas's next claim is that Texas's death penalty scheme, which prohibits instructing a capital jury of the consequences of its failure to agree on a punishment-phase special issue, is unconstitutional. (Pet. Br. at 85-90.) As with his previous claim, Rivas admits it is foreclosed by Fifth Circuit precedent previously addressing this issue and deciding it adversely to his case. *See, e.g.*, *Alexander v. Johnson*, 211 F.3d 895, 897 & n.5 (5th Cir. 2000).

Rivas claims that the death penalty scheme set forth in Texas Code of Criminal Procedure Article 37.071, and in the trial court's jury instructions given in conformity with that law are unconstitutional because the court's instructions did not inform jurors that a failure to reach a unanimous verdict on punishment would result in Rivas receiving a sentence of life imprisonment. According to Rivas, this failure violated his Eighth and Fourteenth Amendment rights.

Upon completion of the punishment phase of Rivas's trial, the court instructed the jury as mandated by TEX. CODE CRIM. PROC. ANN. art. 37.071 §§ 2(d)(2), (f)(2) (Vernon 1981 & Supp. 2005), which specifically prohibits the trial court, the parties, counsel or any other person from informing the jury that their failure to reach a verdict results in a life sentence. The jurors in Rivas's case were required to answer two special issues pertaining to future dangerousness and to mitigation. They were instructed not to answer "yes" to the future dangerousness issue or "no" to the mitigation issue unless all twelve jurors were unanimous in that decision. Finally, the court instructed the jurors that they could not answer "no" to the future dangerousness special issue or "yes" to the mitigation special issue unless at least ten jurors agreed with that answer, and that if they did answer in this manner, Rivas would then receive in a life sentence. (44 RR at 51-52.) These scheme is

-24-

known as the "12-10" rule.  As stated above, the jurors were not informed that their failure to reach a decision regarding either special issue would result in Rivas receiving a life sentence.  Because the Texas Code of Criminal Procedure prohibits such instruction. TEX. CODE CRIM. PROC. ANN. art 37.071 § 2(a)(1), (g) (Vernon 1981 & Supp. 2005).

Rivas argues that this law "creates the potential for considerable confusion among reasonable jurors." (Pet. Br. at 85-89.)  Citing *Mills v. Maryland*, 486 U.S. 367 (1988), Rivas claims that this rule "violates the Eighth Amendment principle in [*Mills*] that it is unconstitutional to instruct capital sentencing jurors in a manner leaving reasonable jurors to believe that their individual vote for a life sentence is worthless unless some threshold number of jurors agree that particular mitigating factors exist." (Pet. Br. at 88 (citing *Mills*, 486 U.S. at 374).)  Furthermore, Rivas claims that "[u]nless jurors are informed of the result of a deadlock in such a situation, the risk that one or more jurors will give a 'majority rules' mentality is too great under the Eighth Amendment, particularly in a capital case." (Pet. Br. at 88-89.)  Rivas cites the Seventh Circuit's decision in *Kubat v. Thieret*, 867 F.2d 351, 369-73 (7th Cir. 1989), for the proposition that "reasonable jurors could have believed that they had no ability to give mitigating effect to any and all types of mitigating circumstances unless at least nine other jurors also voted for life." (Pet. Br. at 89.)

Rivas's argument fails, however, as the U.S. Supreme Court directly addressed this issue in the context of a federal death penalty case in *Jones v. United States*, 527 U.S. 373 (1999).  In *Jones,* the Court examined whether a defendant's Eighth Amendment rights had been violated by the trial court's failure to instruct jurors regarding the consequences of a jury deadlock at punishment.  Under the applicable federal statute, the jury was required to consider the aggravating and mitigating factors and then to decide whether those factors outweighed the mitigating factors.  *Id.* at 385-86. While in a federal death penalty case aggravating factors must be proven beyond a reasonable doubt, a mitigating circumstance may be considered even where as few as one juror finds that its existence has been established by a preponderance of the evidence.  *Id.* at 377.  The jury in *Jones* unanimously determined that two statutory and two non-statutory aggravating factors were proven beyond a reasonable doubt, and certain various members of the jury found that ten mitigating factors had been

established.  Weighing the factors as instructed, the jury unanimously agreed that Jones should receive a death sentence.  The defense in *Jones* had requested an instruction informing the jurors that a failure to reach an unanimous decision as to the appropriate sentence would result in the judge sentencing the defendant to life imprisonment without possibility of parole.  *Jones*, 527 U.S. at 375-80.

In analyzing the facts presented in *Jones*, the Supreme Court found that Jones's Eighth Amendment rights were not violated in Jones's case as a result of failing to inform the jury regarding the consequences of a deadlock on the issue of punishment.  *Id.* at 382.  The Court based its decision on a number of factors, including: 1) that Jones's jury was not misled about its role at punishment; 2) that one purpose of the jury system is to secure unanimity by a dialogue among the jurors; and 3) that the government has a strong interest in a capital case in having the jury express the conscience of the community which might otherwise be undermined if the court were to inform the jury regarding the consequences of a deadlock.  *Id*.

Since *Jones*, the Fifth Circuit has found that the "12-10" rule in Texas does not violate a capital murder defendant's Eighth and Fourteenth Amendment rights. *Alexander,* 211 F.3d at 897 &  n.5.  And the Fifth Circuit  has repeatedly held that any decision holding that Texas's "10-12" rule violated the federal constitution would be a new constitutional rule of criminal procedure as defined by the U.S. Supreme Court in *Teague*, and that it would not be a "watershed" rule, and therefore could not form the basis for federal habeas corpus relief.  *See Teague*, 489 U.S. at 311-13; *Hughes v. Dretke*, 2005 WL 1384580 (5th Cir. June 10, 2005); *Alexander*, 211 F.3d at 897; *Webb v. Collins*, 2 F.3d 93 (5th Cir. 1993).

Rivas asserted his claim as point of error thirteen on direct appeal, and the state habeas court denied his claim.  *Rivas*, No. 74,143, slip op. at 9.  Because the court's ruling was neither unreasonable nor contrary to U.S. Supreme Court precedent, the Court recommends that Rivas's claim for relief be denied.

7.      Violation of Due Process as a Result of Jury Instruction Preventing
Defendant From Showing Unlikelihood of Release on Parole

Finally, Rivas claims that his due process rights were violated by the trial court's instruction

to the jury at the punishment phase that the jury was not to consider how long Rivas might serve in

prison if sentenced to life.  (Pet. Br. at 91-98.)  This instruction accords with Texas Code of Criminal

Procedure article 37.071, § 2(e)(2)(B).  As with a number of his previous claims, Rivas admits that

this claim is foreclosed by Fifth Circuit precedent.  (Pet. Br. at 92.)

The trial court instructed the jury as follows:

> During your deliberations, you are not to consider or discuss the possible
> action of the Board of Pardons and Paroles or the Governor, nor how long a
> defendant would be required to serve on a sentence of life imprisonment, nor how
> the parole laws would be applied to this defendant.  Such matters come within the
> exclusive jurisdiction of the Board of Pardons and Paroles and are of no concern of
> yours.

(44 RR at 50.)

Rivas asserted this claim on direct appeal as his tenth point of error, and it was denied by the

TCCA.  *Rivas*, No. 74,143 slip op. at 8.  The court reasoned that, consistent with state law, "this part

of the charge instructed the jury not to consider how long a life-sentenced juror would serve after

becoming eligible for parole," rather than instructing them not to consider the defendant's eligibility

for parole.  *Id.*  Rivas claims that the trial court's instructions violated his due process rights because

jurors were told not to consider how long he might serve in prison if sentenced to life, even though

they were informed that he would be eligible for parole in forty years.  (Pet. Br. at 91-98.)

According to Rivas, allowing a jury to consider the forty-year minimum is essential to the jury's

deliberation on the issue of future dangerousness.  *Id.*  Rivas argues that "the trial court's instruction

that the jury could not consider parole, or the low likelihood of his ever being released on parole,

denied [Rivas] due process of law" in violation of the holding in the U.S. Supreme Court's decision

in *Simmons v. South Carolina*, 512 U.S. 154 (1994) (plurality opinion).  (Pet. Br. at 96-97.)

Essentially, Rivas claims that *Simmons* requires trial courts to instruct the jury regarding the actual

duration of the defendant's period of incarceration because the time period is necessarily relevant

to a determination of future dangerousness.  *Simmons*, however, only applies to defendants who are

-27-

not eligible for parole. *See Ramdass v. Angelone*, 530 U.S. 156, 166-169 (2000) (plurality opinion) (declining to extend *Simmons*'s rationale to cases such as Rivas's, where the defendant would be eligible for parole).[8]

The Court finds that the state habeas court did not unreasonably apply clearly established federal Supreme Court law in holding that *Simmons* does not apply in the instant case, in which Rivas would have been eligible for parole if given a life sentence. Thus, the Court recommends that Rivas's claim for relief on this point be denied.

## V.    Separation of Powers

In addition to his petition for writ of habeas corpus filed on February 13, 2007, on January 29, 2008, Rivas filed a separate brief entitled "Argument in Support of Petition for Writ of Habeas Corpus Asserting that 28 U.S.C. § 2254 Violates the Separation of Powers Doctrine." (Separation of Powers Brief ("Sep. Powers Br.") (doc. #34).)  The State filed its response to Rivas's brief on February 13, 2008. (doc. #35.)  Essentially, Rivas argues that the standard of review set forth in the AEDPA – that district courts review the state court's disposition of claims under the "objectively reasonable" test–violates the separation of powers doctrine. (Sep. Powers Br. at 1.)  The State has already responded to Rivas's original petition, and Rivas has not sought leave to amend to add an additional argument, thus the court need not address this additional argument.  Out of an abundance of caution, however, the Court examines the merits of Rivas's argument and finds that Rivas's claim is precluded under Fifth Circuit law.  The Fifth Circuit Court of Appeals has expressly stated that the AEDPA does not violate the principle of separation of powers.  *See, e.g.*, *Dufrene v. Brazoria County DA Office*, 146 Fed. Appx. 715, 717 (5th Cir. 2005); *Corwin v. Johnson*, 150 F.3d 467, 472 (5th Cir. 1998); *Hughes v. Johnson*, 191 F.3d 607, 612 (5th Cir. 1999).  As the Fifth Circuit has

---

[8]In September 2005, the Texas legislature changed the law on parole eligibility in cases such as Rivas's. Effective September 1, 2005, in any case in which the prosecution has sought the death penalty, a defendant who has been found guilty of  a capital felony and sentenced to life imprisonment is no longer entitled to parole. *See* TEX. PENAL CODE ANN. § 12.31(a) (Vernon Supp. 2005).  The legislature also amended the Texas Code of Criminal Procedure to require courts charging juries in capital cases to instruct them "that a defendant sentenced to confinement for life without parole under this article is ineligible for release from the department on parole." *Id. See* TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(e)(2)(B) (Vernon 1981 & Supp. 2005).

explained, the AEDPA does not preclude Rivas from receiving a favorable result, nor do its provisions prohibit Rivas from filing required legal documents or having access to the courts. *See, e.g., Dufrene*, 146 Fed. Appx. at 717. Rivas's argument thus fails and the Court thus recommends that any claim he makes based on the separation of powers doctrine be denied.

VI.      Conclusion

For the reasons discussed, the Court recommends that Rivas's petition for writ of habeas corpus be **DENIED**.

**SO ORDERED**.

**SIGNED** January 22, 2010.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE